The next matter, number 25-1458, Rooterman LLC v. Clodian Belegu, et al. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning, Your Honor. Jay Wollman of Randazzo Legal Group for Mr. Belegu, Quality Air Care Corp., Water Damage Restoration, and 911 Corporation, and I would like to reserve two minutes for rebuttal. Thank you. May it please the Court. We are asking the Court to reverse the entry of the preliminary injunction because the enforcement of the non-compete was improper because it restrains only ordinary competition and it is overbroad. Those are the two primary issues. Of course, there are several other flaws, but I'd like to focus on those. First, it restrains just ordinary competition. Maybe for some franchisees it does not, but we're talking here about Mr. Belegu and his company. And here, what are the two issues that were determined? One, confidentiality. He was given confidential materials. No. What he was given was access to confidential materials. And as, Judge Howard, your Honor was on, I believe it was ANSYS v. Computational Dynamics, 595F375, mere access to confidential materials is not enough. Here, they even affirmed that he didn't need training to run it. Why? Because he already knew how to do it. So what confidential material was he given? Well, they allege in the agreement, the agreement itself is confidential. Obviously it isn't because they filed it on the public record. They allege the operations manual is confidential. Well, he didn't read it, and they didn't even point out anything to the court that might have been confidential in it. What else would there be? Sure, he acknowledged that there would be documents that are confidential, but how does he even know in advance? Because they don't give you them until you've already signed the agreement. The judge, Saris, otherwise addressed goodwill. What goodwill, though, accrued to him? Is he going to repeat customers? There's no evidence that he was. There's no evidence that anything specifically, and this goes to the scopes, but addressed water damage remediation. Is Ruderman known for water damage remediation? And is there any goodwill of that as that supports restraining the practice of water damage remediation? No. Only 13 out of 750 franchisees allegedly do this, and how is Mr. Belegu supposed to have known that this comprised part of the A-Corp system when he signed up? If someone also does carpet cleaning, does that mean he's now prohibited from doing it? Ruderman's known for rootering. That's its name, sewers, drains. It's what they register their trademark in. All the evidence shows that that kind of work is what was restricted, was comprised, rather, of this system, but not anything else. Counsel, are you arguing to us, because this is a preliminary injunction, are you arguing that the district court clearly erred in making factual findings that the materials were confidential and that there would be impact on goodwill? Are you arguing there's a legal error? If you could sort of drill down on what precisely you think the district court did wrong, and was it factual or legal, that would be helpful. Thank you, Judge Ruckelman. There are two aspects of that. One is certainly factual, where the record does not support determinations of goodwill because there's an absence of a record of goodwill. There's an absence of a record that these materials were confidential. And then in terms of legal error, there were a couple of points, and we pointed out in our brief, but Judge Saris inappropriately put the burden on the defendants rather than the plaintiffs in the preliminary injunction motion, where she said that the defendants did not show the material breach. And while standard, that is, an affirmative defense at trial, the overall burden on a motion for preliminary injunction belongs to a plaintiff, and so they did not meet that burden. But Judge Saris shifted the burden improperly onto the defendants. How do you think that's supposed to work for a noncompete preliminary injunction? I thought your defense was the preliminary injunction was inappropriate because of a material breach. Yes. So how does the burden work in your view there? They say we're entitled to a preliminary injunction because we need this not for restraining ordinary competition but for these other reasons. They then have to say, and we can establish there was no material breach? Well, I would suggest that one view it kind of like McDonnell-Douglas, where once you proffer that there was some form of affirmative defense, then they still have to carry the burden of proving their case over that. So all you have to do is say, what do you have to show with respect to material breach to get them to then have the burden of showing there was no material breach? Well, once you've alleged in your opposition, they have to then prove that they didn't breach it. And Judge Saris said they didn't have a material breach, but then, of course, that raises the question, what were they supposed to do? What are their obligations under the contract? They don't have to train. They don't have to provide marketing. They don't have to provide an enforceable mark, apparently. So what exactly was he even paying for in the first place? That goes back to basic contract formation. What is their consideration in the whole franchise? It may be different in other franchise systems, but one really thinks that the name should be the primary issue, and they don't even own their name. All they own is a design. They didn't disclose that. They even said to the contrary, it's a word mark. But it's not a standard character mark. Anybody can basically set up shop as Ruderman. They can't use their logo, but they can use the name because it's not protected. So what did Mr. Blagun's companies get when they signed up as a franchise? What are they supposed to provide? Nothing. And if they're providing nothing, well, then he doesn't have to provide anything. And if they are supposed to provide something, they didn't, and that would be the material breach. Every single one of their primary obligations was breached. They didn't train. They didn't provide the advertising, and they didn't. Does this relate to the burden point, or are you just saying you've proved that there was a material breach? I would say it demonstrates that there was a material breach, but they certainly hadn't overcome it. And this case is a little different, and I know we've raised some issues here on appeal that might not have been fully elucidated below, but I also want to make sure that the court is aware. My client may never get an opportunity to address those issues below. Normally, one has a preliminary injunction and looks maybe on a permanent injunction. You might prevail. The problem is Judge Saris set up a calendar where the preliminary injunction will expire in September. Trial is not going to be until well after that because discovery expires in September. And so by that point, we may not even have certain trial issues because they may be deemed moot. So my client will never get a chance to prove that he should have won in the first place. Essentially, this preliminary injunction is a permanent injunction. And unless the court has any other questions, I would ask that the court reverse. Thank you. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning, Your Honors. My name is Jeffrey Rosen for the appellee rudiment, and with me is Lisbeth Valdez on brief. Your Honors should affirm the grant of the injunction. Harkening back to the Ross Simons case, this court's case, the likelihood of success on the merits here was very strong. Mr. Bellegou and his 13 franchisees, which encompassed all of New Jersey, a small portion of New York, a small portion of Pennsylvania, a lot of zip codes, operated rudiment of New Jersey. And he did that for four or five years before being terminated for failure to pay royalties. What happened after that is he continued to be rudiment. He continued to be rudiment from September of 2024 until December of 2024. We sued. Judge Saris issued a preliminary order. And then up until April of 2025, he continued to be rudiment. He said he was disassociating, but he wasn't. We found that he was still operating as rudiment right up to late April, early May. And the company that he had incorporated, 9-1-1 Sewer and Drain, in 2024, before he was terminated, was the company to which he transferred all of his website goodwill to under rudiment. So in 2022, Mr. Bellegou came under my client's franchisorship, as it may be called, because we bought ACORP. And in 2022, he established RM Water Damage Restoration. And in 2024, he established 9-1-1 Sewer and Drain. Those companies became what he was using to be rudiment from 2022, late 2022 on. And the sign on the front of his building that's in our supplemental appendix at 84 really says it all. RM Water Damage Restoration, Mr. Bellegou's company, and then rudiment underneath it. He was using our brand, our goodwill, to run his business for years. He was doing it with water damage restoration as a part of it. And we showed your honors clearly in the record, the numerous places water damage restoration is a part of our business, part of our trademarks. We showed you right in the record where Mr. Bellegou was actually one of the franchisees taking advantage of that. So he was doing all of this work and still doing all of this work right up through April of 2025 under rudiment. Council, what was the evidence in the record on the materials that you've identified, like the operations manual, the scripts, et cetera, actually being confidential? I understand the franchise agreement says they're confidential, but that's not supposed to be dispositive. Your opposing counsel says there is no evidence that these materials were actually confidential or that there was actual trading on goodwill. So can you just help us understand, was there evidence and what was it? Thank you, Your Honor. So when a franchisor sells the franchisee a territory, they do so by way of a franchise disclosure document. Attached to that franchise disclosure document is a table of contents of an operations manual. The franchisee is then given the operations manual when they become a franchisee. That's what they gain access to. That is a confidential playbook of how to be a franchisee in the system. Judge Saris found that that marketing playbook and phone scripts that Mr. Beligou had and was given as a franchisee were all confidential information. Were those in the record on the PI? Were they actually provided to the court to review? There was no provision of them. Well, the court had the table of contents of the operation manual, but not the filing of those confidential materials. Nothing was done with that. However, there was a declaration about what was given to Mr. Beligou and what was confidential. And that was consistent with the same kind of evidence that the Massachusetts Supreme Court found in Boulanger is what a franchisor gives a franchisee that is confidential. And that's what Judge Saris found to be confidential. So then you look... So would you say it was really more of a legal holding then than a factual? Since you didn't look at the underlying documents, you just said it's the same type of documents as were issued in Boulanger and therefore as a legal matter they qualify as confidential? I would say as a legal matter that's true, Your Honor, but factually they are all part of what goes into being a franchisee. And Mr. Beligou operated as that franchisee throughout New Jersey. So that was one piece, Your Honor. The other piece was the goodwill. Also what Boulanger says is irreparable to lose. But with a strong case of likelihood of success on the merits built with the facts that I've just summarized, Ross Simon says irreparable harm is important but less important even when you get to the strong likelihood of success argument and facts, which we had. But when it comes to goodwill, if you think about the September of 2024 to the April 2025 timeframe, Mr. Beligou was still Ruderman, slowly disassociating from January of 2025 to April and May of 2025. He was still Ruderman. So that he was using goodwill from September of 2024 all the way up to May, April, May of 2025, he was misusing goodwill. We have now cleared the territory. We're actively trying to sell the territory. But Judge Cyrus properly recognized that that was irreparable harm and is irreparable harm and is properly enjoyed. On the playbook, was it called the operations manual? Operations manual, marketing playbook, Your Honor. Maybe I misunderstood your opponent's argument. I didn't take them to be saying there was affirmative evidence showing that it was public and not confidential. I took them to be saying that he didn't read it. Thank you, Your Honor. My opponent has said that filing the franchise agreement with the court was somehow filing the confidential material for everyone to see. That's not the operations manual. That's a separate document. A franchise agreement is the contract between the franchisor. The operations manual is how to be a franchisee in our system. Here's what you need to do. Here's what you need to follow. That is constantly And there's a declaration saying that was handed over, not just you could look at it if you want? Correct. And it's not our burden to say, hey, you read this. I understand that. But there is a declaration saying it was actually handed over. Yes, Your Honor. And your position is there's nothing in the record indicating that it was also public for everyone to see. There would be nothing in the record that it's also public for everyone to see. The table of contents... So with respect to those documents, the argument appears to be that it's not a material confidential document because it wasn't read. That is the argument. The facts to support it are contrary to operating the franchise in our system for five years. Legally irrelevant whether he read it or not for purposes of the injunction. Correct, Your Honor. Similar to not claiming you don't read a contract that you signed. Legally irrelevant. On material briefs, how do you want us to address that? I think, Your Honor, properly inquired about what burden that would be. It would be the defendant's burden to show you materially breached and therefore we don't have to comply with the franchise agreement at all. That's a significant factual argument. And how does the burden work when you're seeking the preliminary injunction? Well, we have to show a likelihood of success on the merits of our contract. The defense is an affirmative defense. We don't have to comply with that contract because you materially breached. So the presentation of evidence, the convincing of the district court that there was a material breach is substantial and the defendant's burden and Judge Cyrus addressed that. They identify various things that weren't done. The micro sites, etc. And they say when you add it all up, it's just not plausible to think those inactions are not a material breach. And the district court's answer to that is roughly speaking, they haven't said enough to explain why it is a material breach. Is that the sum and substance of what the district court says in response? There's not a whole lot of analysis of exactly what is a material term or isn't a material term. It's sort of just a conclusion that yes, those things didn't happen, but somehow those aren't material breaches. Is that a fair way to read the district court? Your Honor, yes in some ways. The first argument that there was a material breach for certain of the claims, Judge Cyrus said we've refuted that as rudiment. We've refuted that there was actually something that happened there that could be material. The next part of that, Your Honor, is that Judge Cyrus said that wouldn't be significant enough to even be a material breach if in fact it actually happened. So Judge Cyrus did make a finding on that, Your Honor. And on that, is that a factual judgment or a legal judgment? I mean, that's the question of whether not doing something was material, I guess. I think it's a legal decision that it wasn't significant enough to rise to the level of something that would be analyzed as a material breach. How are we supposed to assess that? Well, I would ask that you don't need to because the defense was not properly supported by the conjecture and the speculation and the lack of evidence from the other side. But even if there was that evidence, I would say that Judge Cyrus properly analyzed it and she should be affirmed. Why? What are we supposed to use to assess what's material here? You would be able to use Mr. Belegu's declaration and the emails that we submitted in support that are all part of the record and supplemental record that we cited in that portion of our brief. Thank you. Thank you, Your Honors. Thank you, Counsel. At this time, would Counsel for the Appellant please reintroduce himself back on the record. He has a two-minute rebuttal. Good morning again. Jay Wolman for the Appellants. I just want to briefly say Mr. Belegu and his companies did not continue to be rudiment. It was a spate of disassociating and sometimes one finds, oh, there was this thing. Let's get rid of it. He was actively disassociating. Second, water damage remediation is not, in fact, part of the trademarks. That is a misrepresentation of what was stated. The only trademarks are in Class 37, which is for plumbing. Water damage remediation does not address that. In terms of what was confidential, we raised the agreement as an example to undermine that everything is confidential. Because the agreement also says that the agreement itself is confidential. But clearly, they don't treat it as confidential. So why should we assume that anything else is confidential? Judge Saris didn't look at anything. She wasn't given a chance. Maybe Dunkin' Donuts, their operations manual and playbook has confidential material in it. But what confidential material is in the Ruderman one? We don't know. Is there more beyond a table of contents? Is there more beyond what CHAT GPT could generate for what should be in a franchisee's operations manual? Judge Saris doesn't know that. She didn't look at anything. She didn't look at any marketing playbook. This is based solely on Ruderman saying it is confidential. And Judge Saris saying, yes it is. Getting back to the question of material breach, while it's an affirmative defense, it's on a motion for preliminary injunction. The burden is on the movant. The movant must show likelihood of success on the merits. And that likelihood of success comes after trial when they would have to overcome the affirmative defenses. And here it's a little tough for a defendant to fully brief that before the preliminary injunction hearing. But one also needs to think when will then, if at all, Mr. Belegu have a chance to do that, especially where trial will come after the non-compete term expires. Thank you. Thank you counsel. That concludes argument in this case.